and Amari Company and others, so we will proceed with you, Mr. Fusco. Thank you, Your Honors, and good morning. As with any case, it is always my position that the case begins with determining whether or not there's jurisdiction to be heard by the court. I would respectfully submit, and as was pointed out in our briefs, in this to that case, for that case to proceed. And are you arguing there's no jurisdiction because it should have gone to arbitration? Yes. How can you argue that, given you explicitly said in one of your filings before the district court that the binding mediation provision does not encompass or require a stay of the counterclaims here? So you argued what seemed First of all, you didn't move to compel, and you argued what seems to be the complete opposite to the district court. And I might point out, just to pile on, that people often waive arbitration agreements. They litigate for a while, and then a year or so in, somebody remembers there was an arbitration agreement, and so it's waivable. It's not a subject matter jurisdiction consideration. I would submit to Your Honors that A was not waived in this particular instance. But that doesn't mean that it's subject matter jurisdiction. I believe the way it was pointed out in our briefs, Your Honor, that the issuance of a schedule in this particular instance, which is what the settlement agreement, the agreement called for, would in fact bind every dispute that could have arisen. I don't believe— How can you argue that now, though? I'm going to read a little bit more from your submission to the district court. Needle—and I'm reading from record number 70—Needle respectfully submits that the federal court is the proper forum to resolve all claims to the settlement fund. Accordingly, the binding mediation provision should not stay any of the proceedings in this case. How can you come in now and argue there's no jurisdiction because it should have gone to arbitration when you took the exact opposite position in the district court? That's a good question, Your Honor. I'm sorry. I was not the— I'd love to hear your answer. I was not the trial level—I would like to hear the answer, too. I was not the trial level— But it's your responsibility to know the record. Yes, it is, Your Honor. Maybe move on to the next question or next—you may want to move on to the next issue. The main issue— You—I'll start you on another issue. You disagree with the court's interpretation of the term pursuant to in the fee agreement. But shouldn't that term have the same meaning in the same sentence? In other words, in the first half of the sentence, it clearly references an explicit fee award under RICO or other fee-shifting statutes. So why shouldn't it similarly be read in the second half of that sentence as linked to an explicit fee award in any settlement agreement? I believe there was a misinterpretation, Your Honor, of the claim pursuant to—if the words in the contract are clear and unambiguous, they should be given their plain and popular meaning, Your Honor. But Judge Rofner is pointing out that this is a provision normally read as a whole. I would respectfully disagree that that would only be in the—is susceptible to more than one meaning or if it's ambiguous. I don't believe the term here— Why is it ambiguous? I mean, that's just strained to see what you're talking about. I—again, it should be the common and generally accepted meaning of the words, and I don't believe the plain meaning of pursuant to in the settlement agreement was properly applied. Maybe I misunderstood your question, Your Honor. I don't think you did. I don't think you could. Could what, Your Honor? I'm sorry. Why don't you just go forward, sir, with your argument? My main argument centers around jurisdiction, and that's been taken care of by Her Honor. I don't believe that—again, I respectfully disagree that we're precluded from arguing jurisdiction at this point because of that submission in the— But of course you are. You waived it. It's gone. I don't believe that it is waivable, Your Honor. But I explained that it's not a jurisdictional argument, and if it's not a jurisdictional argument, it is waivable. It has nothing to do with whether subject matter jurisdiction was secured by the federal district court over this matter. It was. It's a contractual issue, not a subject matter jurisdiction issue. And while you're right you can't waive subject matter jurisdiction, you could certainly waive contractual arguments. I'm not sure that the—I don't know how to answer that, Your Honor, to be honest with you. I don't have an answer to that question. There are other issues from below that need to be addressed. The sanctions concerning Mr. Needle, I believe, were improper. He was sanctioned for submitting responses and paperwork that was upheld by—reviewed by at least four other attorneys as being valid. Mr. Needle was sanctioned for asking for an extension that was ultimately granted. So I believe the sanctions are an issue at hand here. They should be overturned. I believe that— But he was sanctioned on the extension that was ultimately granted because he waited until the last minute and required the lawyers from the other side to expend funds on it when he had already had 60 days to respond. And after a long history and lots of docket entries leading up to it. It wasn't just for the fact that he asked for an extension. The extension was granted, Your Honor. That doesn't mean that the district court couldn't have thought that after 60 days had gone by and yet another 14 was necessary, it wasn't sanctionable conduct. The district judge could do both of those things in the interest of trying to keep the case moving along. You're right at this point, I'm going to reserve the rest of my time for—I'm going to regroup and reserve the rest of my time for a rebuttal if that's okay. All right. It's up to you. I believe, Mr. Cochran, it's your turn. It is my turn. And I'm not going to take very long with the court on this. I only have five minutes and I will try very hard not to use all of those five minutes. Judge Shader wrote two well thought out, extremely well reasoned, as one would expect from Judge Shader. I can't possibly do justice to repeating that. I filed a brief on this that I think adequately states our position. I think that one of the things—I think that there are several reasons why they can't prevail on this, but the main one is that they have acknowledged that there's only one settlement agreement and they're trying to rely on that settlement agreement as providing an alternate fee that would be higher than one-third. Yet that settlement agreement does not say a word about these, let alone the amount. The agreement that Mr. Needle drafted provides for a process to be gone through for any settlement agreement that they have. And it requires the lawyers to provide to the clients a statement explaining precisely what the settlement agreement would be about, the recommendation as to how they should act on it, and it had to be approved by two-thirds of the clients. You're talking about part six of the settlement agreement, right? And that never happened. To the extent that they did, Mr. Needle did send a letter out that could perhaps be viewed as that notice. He doesn't mention the amount of the attorney's fees. And so when the clients were presented with this to sign, they didn't know what fee would be—if their argument is correct, that you would interpret this agreement to provide that second clause of the first part of the sentence that provides for fees. I don't see how that could ever be viewed as pursuant to the settlement agreement that doesn't talk about the fees. And so he loses on that. He also tried previously before Judge Tharp to have the jurisdiction. He shot that down immediately. There wasn't a thing. So now he's left with—he doesn't have anything else but to argue. And now he has a settlement agreement that has an integration clause that specifically— Well, that's the problem, isn't it? He's, I think, trying to bring in extrinsic evidence. Yes, a prior agreement. And he's dead in the water on that. I don't think I have to explain that to you. It's very clear. I'm not even sure it was a prior agreement. It looked like it was a prior proposal. That's right. Well said. For fees. There's some evidence on the other side. There's no offer and acceptance that's pleaded, certainly none that would include two-thirds of my clients. I'll give the rest of my time up to Mr. Borlak, who will handle the sanction issue as well as his own issue in the Division of Fees. All right. Thank you. Mr. Borlak. Well, I seem to be in a position almost to be arguing against myself. There's really nothing for me to shoot at. There's been very little. So let me first— We're not going to require you to stay at the podium. I realize that, Your Honor. It's an unusual thing for me to be in this position. May I ask, does the Court have any questions that I can answer? Questions, but none that you could possibly answer. Thank you, Your Honor, for your confidence in me. I just want to say, let me just say this. What I characterize as Sanction 4 did come up. Sanction 4 was a small sanction. It was only about $1,600. But it told a lot. It told a lot about what went on in this case and why Judge Schader referred to Mr. Needle as trying to make a, quote, shambles out of it. And you're calling Sanction 4 as the sanction for the extension of time. That's the 14-day extension. And why Judge Schader referred to the chaos, quote, unquote, that he found Mr. Needle making in this case. Sanction 4 was at the end. Mr. Needle had asked for a 60-day extension. Judge Schader said, I think actually 42 days is a bit too much. But he gave him the 60 days. And he set, a week later, a status call, as he usually did a status hearing, so that we could all go over whether a reply brief would be necessary. That time was allotted for that. What happened is, on the 59th day, Mr. Needle filed a motion for an extension. And he gave two reasons. He said, number one, I still haven't filed my timesheets, my reconstructed timesheets, which, by the way, the settlement was December 5, 2013. And this is in, what, this is in 2017. When this is happening, he still hadn't filed it. Secondly, he said, you know that status hearing you had a couple months ago about this? I wanted the transcript. And I just found out that my don't have it. Why he would need a transcript of a status hearing, I have no idea. It was never explained. These were disingenuous reasons for an extension. And Judge Schader caught it right away. He knew. He had already mentioned before that, that Mr. Needle had lied, quote, unquote, for a reason for an extension. And he said to Needle, he started it out with, he said, Mr. Needle, have you read Royce's motion or brief in opposition? It was a two and a half page opposition, Your Honor. And Mr. Needle said, no, I've been working so hard on the motion and responding to the motion for default. I have not read the opposition, the two and a half pages, as to why I should not get an extension. Nobody in that courtroom believed what Mr. Needle said, surely not Judge Schader, who had been on the bench for 35 years and 30 years in practice before that. I need not remind you what Judge Schader said, which I think are words that are amazing. He said, in six and a half decades in the law, 30 plus on the bench, I have never seen anybody so unrelentingly obstructionist as you, Mr. Needle. If you were an Illinois lawyer, I would have reported you to the ARDC. That coming from a long experience and well-respected district court, Judge, may he rest in peace. This case goes down to whether a district court can have the control of a courtroom so that it can administer justice. Maybe you run into this now and then, I'm sure, with pro se people. But here's a case where the lawyer says, I've had 35 years experience litigating all kinds of sophisticated, complex commercial cases. And look what he tried to do to Judge Schader. He tried to run out the clock on Judge Schader, frankly. That's what he did. That's what he's doing with Sanction 4. That was the purpose of the extension. And to some extent, I guess it worked. Judge Schader, unfortunately, had to retire before this case was over. And then he got Judge Pallmeyer. And even Judge Pallmeyer, in his brief, he says, if this case is remanded, don't remand it to Judge Pallmeyer. That's two judges he couldn't get along with, Judge Schader and Judge Pallmeyer. Are you sure you have no questions for me? In that case, I'm going to rest. Thank you. All right. Thank you very much. Anything further, Mr. Fusco? It's up to you. I respectfully need to take those crack at this. Your Honor, in regards to your question about waiving, I believe the situation in the vein in which that comment came up, that quote came up, was first there was an objection by Mr. Fayette of counsel. And he, well, first a quote that he had said he, that Mr. Royce must issue a schedule. Then he says if the schedule is not issued, then the court must be held, must hold. If not, then the court must take over this case. So the first request was for, I think you respectfully took it a little bit out of context. There was more to the quote than that. And it was, if a schedule is not to be issued, then the court must take over. But the request all along was for a schedule to be issued. And that would have ended any reasonable and real fear of double litigation anywhere. And that would be the basis for, one of the basis is for the interpleader action. I don't know how a statement that Needle respectfully submits at the federal court is the proper forum to resolve all claims to the settlement fund. Accordingly, the binding mediation provision should not stay. Any of the proceedings in this case could be taken to mean anything other than the case should stay here and not go to arbitration. I thought it was part of a bigger quote, Your Honor. That is true. But given that, that broad, very straightforward statement, I don't know how it could be taken otherwise. I would once again submit to Your Honor respectfully that if it's in the vein of, if no schedule is going to be issued, then that would have to happen. But in this case, a schedule should have been issued and that would have eliminated the case, would have eliminated the interpleader action. That is our position, Your Honor. That's all I have. Thank you. All right. Thanks very much. Thanks to all counsel. We'll take the case under advisement.